IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ILLINOIS TOOL WORKS, INC., )
a Delaware corporation, )
 )
    Plaintiff, )
 )
 )   No. 05 C 5002
v. )
 )   Judge Ronald A. Guzmán
CHESTER BROTHERS MACHINED )
PRODUCTS, INC., an Illinois )
corporation, d/b/a "Pneu Fast" and/or )
"Pneu-Fast," )
 )
    Defendant. )

## MEMORANDUM OPINION AND ORDER

Illinois Tool Works, Inc. ("ITW") has sued Chester Brothers Machined Products, Inc., d/b/a "Pneu Fast" and/or "Pneu-Fast," for its alleged violations of the Lanham Act and state law arising from defendant's unauthorized use of plaintiff's trademark. The case is before the Court on defendant's Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss the amended complaint. For the reasons set forth below, the motion is granted in part and denied in part.

### Facts

ITW is a manufacturer of, among other things, pneumatic nailers and staplers. (Am. Compl. ¶ 7.) Since January 1997, ITW has manufactured nailers and staplers with a distinctive orange coloration. (*Id.* ¶ 8.) Due to its advertisement efforts and long history, ITW's orange mark has earned valuable goodwill among relevant consumers. (*Id.* ¶ 10.) To protect that goodwill, on May 4, 2004, ITW obtained a federal trademark registration for the color orange mark. (*Id.* ¶ 11.) The

registration covers "pneumatic and gas powered hand tools, namely nailers and staplers" for "the color orange as applied to the housing and grip of the nailers and staplers." (*Id.*)

Long after ITW started advertising and selling its products under the orange mark, Pneu Fast, without authorization from ITW, began to incorporate in its advertisements a photograph of a pneumatic nailer bearing the color orange and the name "Pneu Fast." (*Id.* ¶ 13.) The advertisements, however, are for nails not nailers. (*Id.* ¶ 31 & Ex. 2.)

Plaintiff contends that defendant: (1) is liable under the Lanham Act for trademark infringement, false designation of origin and false advertising (Counts I-III); (2) violated the Illinois Deceptive Trade Practice Act, 815 ILL. COMP. STAT. 510/1 *et seq.* (Count IV); and (3) committed unfair competition in violation of Illinois law (Count V).

## Discussion

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). No claim will be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

### Count I: Trademark Infringement

To state a claim for trademark infringement under the Lanham Act, "plaintiff must establish that (1) its mark is protectable and (2) the defendant's use of the mark is likely to cause confusion among consumers." *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 673-74 (7th Cir. 2001).

2

Defendant says plaintiff has not satisfied the first element because the complaint alleges infringement of a common-law mark, not a registered mark. The Court disagrees. Though the complaint refers to a common-law mark, it also explicitly alleges that defendant infringes its registered mark. (*See* Am. Compl. ¶¶ 3, 20.) Thus, the first element is met.

Defendant also contends that plaintiff has not adequately plead the second element, that defendant's actions are likely to cause confusion. Defendant argues that consumers cannot be confused by its advertisement because it does not sell the tools for which plaintiff's orange mark is registered.

Once again, the Court disagrees:

> A likelihood of confusion may exist even if the parties are not in direct competition or their products and services are not identical. Rather, because the rights of an owner of a registered trademark extend to any goods that might be, in the minds of consumers, "related," *i.e.*, put out by a single producer, the more accurate inquiry is whether the public is likely to attribute the products and services to a single source.

*CAE*, 267 F.3d at 679. Plaintiff alleges that defendant's use of the orange-colored mark is likely to lead consumers to believe that defendant's products originate from or are sponsored, endorsed or authorized by plaintiff. (Am. Compl. ¶ 19.) Given the relationship between nails and nailers, the Court cannot say, as a matter of law, that the advertisement is incapable of causing confusion. *See E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1293-94 (9th Cir. 1992) (upholding finding of likelihood of confusion between cheese retailer's use of "Gallo" and winery's Gallo trademark); *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 465 (3rd Cir. 1983) (upholding finding that there is a likelihood of confusion between defendant's use of the name "Lapp" on electrical wire and plaintiff's Lapp trademark for ceramic insulators).

Defendant also says that there is no likelihood of confusion because its advertisement does not display an exact replica of plaintiff's trademark. Once again, the Court disagrees. An allegedly confusing mark can infringe a registered mark without being identical to it. *Imperial Serv. Sys., Inc. v. ISS Int'l Serv. Sys., Inc.*, 701 F. Supp. 655, 658 (N.D. Ill. 1988). In fact, when the marks are not seen together, as in this case, it is "inappropriate to focus on minor stylistic differences to determine if confusion is likely." *Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.*, 128 F.3d 1111, 1115 (7th Cir. 1997). Instead, comparisons in such cases "should be made in light of what happens in the marketplace and not merely by looking at the marks side-by-side." *Id.* (quotation omitted). Thus, even if the mark defendant used is not identical to plaintiff's registered mark, that fact would not preclude a finding of confusion.

The Court is also not persuaded that plaintiff must allege every factor relevant to likelihood of confusion to satisfy that element. *See id.* (listing factors). "The likelihood of confusion test is an equitable balancing test" and "courts may assign varying weights to each of the factors depending on the facts presented." *CAE*, 267 F.3d at 678 (quotation omitted); *see Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 462 (7th Cir. 2000) (stating that the likelihood-of-confusion factors are not "a mechanical checklist" and "no one factor is decisive"). As a result, plaintiff's failure to allege each of the factors is not fatal to its claim.

In short, plaintiff has sufficiently alleged the elements of a trademark infringement claim. Defendant's motion to dismiss Count I is, therefore, denied.[1]

---

[1] Defendant also argues that plaintiff's trademark registration does not apply to the nail guns in defendant's ads. Because defendant raised this argument for the first time in its reply brief, it is waived. *Hess v. Reg-Ellen Mach. Tool Corp.*, 423 F.3d 653, 665 (7th Cir. 2005).

## Count II: False Designation of Origin

To state a claim for false designation of origin under 15 U.S.C. § 1125(a)(1)(A), plaintiff must allege that: (1) defendant used a false designation of origin or false representation in connection with its goods; (2) defendant caused those goods to enter interstate commerce; and (3) consumers are likely to be confused by the false representation. *Web Printing Controls Co., Inc. v. Oxy-Dry Corp.*, 906 F.2d 1202, 1204 (7th Cir. 1990). Defendant says that plaintiff cannot assert a false designation claim because such claims require an allegation that defendant misbranded, *i.e.*, sold its own goods under plaintiff's trademark or removed plaintiff's marks from goods and resold them as its own.

Defendant's argument is based on a misreading of *Web Printing*. The false designation claim in that suit arose from defendant's sale of plaintiff's printing equipment as its own. *Id.* at 1203. In discussing the elements needed to prove the claim, the Seventh Circuit said:

> As set out in 15 U.S.C. § 1125(a), a violation of the Lanham Act is established upon proof only of the following: First, that the defendant used in connection with goods or services a false designation of origin or false description or representation. Second, that the defendant caused such goods and services to enter into commerce. Third, that the plaintiff is a person "who believes that he or she is likely to be damaged as a result thereof." In modern day parlance, *and in the context of this suit*, a violation of section 43(a) of the Lanham Act is shown by (1) Oxy-Dry's material misbranding of WPC's products, (2) Oxy-Dry's introduction of WPC's products into interstate commerce, and (3) the likelihood that consumers will be confused by Oxy-Dry's material misbranding.

*Id.* at 1204 (emphasis added). In other words, the court said that misbranding was a prerequisite to that false designation claim, not to every false designation claim.

Though misbranding can give rise to a false designation claim, such claims can also be based on representations that lead consumers to believe that "the mark's owner sponsored or otherwise approved [its] use." *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema Ltd.*, 604 F.2d 200, 205

5

(2d Cir. 1979) (upholding false designation claim against producer of adult film in which the star wore a cheerleading uniform like plaintiff's trademarked uniform because the public might believe plaintiff sponsored the film or authorized the use of its trademark in it); *see Better Bus. Bureau of Metro. Houston, Inc. v. Med. Dirs., Inc.*, 681 F.2d 397, 399 (5th Cir. 1982) (upholding false designation claim against defendant that ran advertisements implying that its weight loss services were endorsed by plaintiff). Plaintiff alleges that defendant's use of its trademark in advertisements and on defendant's website is likely to cause consumers to believe that plaintiff makes, endorses or sponsors defendant's products. (*Id.* ¶¶ 13, 19, 28.) Those allegations are sufficient to satisfy the first and third elements of its false designation claim.

The situation is different, however, for the second element. Plaintiff alleges that defendant's advertisements enter interstate commerce, but it does not allege that the goods themselves do. Absent that allegation, the false designation claim fails. *See Web Printing*, 906 F.2d at 1204 (stating that entry of goods into interstate commerce is an essential element of a false designation claim). Thus, defendant's motion is granted as to Count II.

### Count III: False Advertising

To state a claim for false advertising under 15 U.S.C. § 1125(a), plaintiff must allege that: (1) defendant made a false statement of fact about its own or another's product in a commercial advertisement; (2) the statement deceived or has the tendency to deceive a substantial portion of its audience; (3) the deception is likely to influence consumers' purchasing decisions; (4) defendant caused its false statement to enter interstate commerce; and (5) plaintiff has been or is likely to be injured as a result. *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999).

6

With respect to the last three elements of the claim, plaintiff alleges that defendant's advertisements: (1) attract consumers to defendant's goods because the mark leads them to believe that the goods are made by or affiliated with plaintiff (Am. Compl. ¶ 19); (2) enter interstate commerce (*id.* ¶ 15); and "jeopardize[] the goodwill built up by [plaintiff] in its color orange mark, causing [it] serious and irreparable injury." (*id.* ¶ 32). Those allegations are sufficient to satisfy elements three through five.

Plaintiff has also satisfied the second element. Though defendant argues that its advertisements target a niche audience that is unlikely to be deceived, whether that is true is a factual matter that cannot be resolved on a motion to dismiss. At this stage, it is reasonable to infer from plaintiff's allegations that the parties advertise to the same trade in the same media, defendant uses the color orange in its ads to attract plaintiff's customers, and the ads are misleading, *see id.* ¶¶ 14, 16-19, that a substantial number of the people who see the advertisement will be deceived.

That leaves the first element, whether defendant "misrepresent[ed] the nature, characteristics, qualities, or geographic origin of [its] or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). Plaintiff alleges that the advertisements misrepresent the nature of defendant's commercial activities because they imply that defendant sells a nailer, though it does not. (Am. Compl. ¶ 31.)

Defendants says that the advertisements do not, and cannot, make any such implication because they promote nails, not nail guns. Once again, however, that is an issue of fact that cannot be resolved on a motion to dismiss. *Allsup, Inc. v. Advantage 2000 Consultants Inc.*, 428 F.3d 1135, 1138 (8th Cir. 2005). Thus, the asserted transparency of the advertisements is not a basis for dismissing this claim.

Defendant also contends that the claim should be dismissed because plaintiff cannot allege that the misrepresentation was made in a commercial advertisement. This argument is based on a four-part test adopted by a number of courts for determining whether contested speech constitutes "commercial advertising" within the meaning of the statute:

> In order for representations to constitute "commercial advertising or promotion" . . . , they must be: (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services . . . [and] (4) . . . disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.

*Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1273-74 (10th Cir. 2000); *see Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999) (adopting same test); *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1384 (5th Cir. 1996) (same).

The Seventh Circuit is not one of those courts. In fact, it has said that it has "serious doubts about the wisdom" of the test. *First Health Group Corp. v. BCE Emergis Corp.*, 269 F.3d 800, 803 (7th Cir. 2001). Those doubts, however, revolve around the test's first factor, which equates commercial advertising with commercial speech:

> The district court treated "commercial advertising or promotion" as a synonym for all commercial speech that the first amendment allows the federal government to regulate. In reaching this conclusion it relied on a line of decisions by other district courts that follow a multi-factor approach for determining the scope of § 43(a). We have serious doubts about the wisdom of displacing the statutory text in favor of a judicial rewrite with no roots in the language Congress enacted. Treating § 43(a)(1) as filling all ground that the Constitution allows to the legislature is especially implausible, for when the Lanham Act was adopted there were no constitutional limits on the regulation of commercial speech. Any plan to occupy all of the constitutionally permitted space would have used the phrase "commercial speech," rather than "advertising or promotion" in § 43(a)(1)(B), and the variety of other scope rules found elsewhere in the statute. The language and structure of § 43(a)(1)(B) do not suggest a line between commercial and political speech, with the former completely covered and the latter not. They suggest a line between varieties of commercial speech.

8

*Id.* (citations omitted).

The *First Health* court said nothing about the second factor, that the parties must be in commercial competition, which is at issue in this case. Moreover, unlike the first, the second factor is rooted in the language of the statute. In relevant part, the last section of the Lanham Act provides: "The intent of this chapter is to regulate commerce within the control of Congress by . . . protect[ing] persons engaged in such commerce against unfair competition." 15 U.S.C. § 1127. Making commercial competition a prerequisite to false advertising claims effectuates that expressed intent. Accordingly, the Court holds that plaintiff must allege that it is in commercial competition with defendant to state a viable false advertising claim.

Plaintiff has not made the requisite allegation. Rather, plaintiff alleges that it makes nailers and defendant makes nails, (*see* Am. Compl. ¶¶ 7, 19, 31 & Ex. 2), allegations that do not support the inference that they are competitors. Consequently, the false advertising claim must be dismissed.[2]

## Counts IV & V: Deceptive Trade Practices & Unfair Competition

In Counts IV and V, respectively, plaintiff alleges that defendant's actions violate the Illinois Deceptive Trade Practices Act, 815 ILL. COMP. STAT. 510/1 *et seq.*, and constitute unfair competition under Illinois common law. As the parties agree, the claims in these counts mirror those in Counts II and III. (*See* Def.'s Br. Supp. Mot. Dismiss at 15 & Pl.'s Resp. Mot. Dismiss at 14); *Gimix, Inc. v. JS&A Group, Inc.*, 699 F.2d 901, 908 (7th Cir. 1983) (holding that summary

---

[2]Defendant also says this claim should be dismissed because plaintiff has not alleged the misrepresentations with particularity, as required by Federal Rule of Civil Procedure 9(b). Given our holding with respect to commercial competition, however, we need not address this issue.

9

judgment was appropriate on state-law claims of unfair competition because plaintiff "does not have a valid trademark in the term 'Auto Page' and . . . has not made a showing sufficient to create a material issue of fact as to the [Lanham Act] false advertising claim"). Accordingly, the claims in Counts IV and V must be dismissed as well.

## Conclusion

For all the reasons set forth above, defendant's motion to dismiss the amended complaint [doc. no. 29] is granted in part and denied in part. The motion is granted as to Counts II-V, which are dismissed without prejudice, and denied with respect to Count I. Plaintiff has ten days from the date of this Memorandum Opinion and order to amend its complaint in accordance with this Order. If no amendment is filed, Counts II-V will be dismissed with prejudice.

**SO ORDERED.**          **ENTERED:**

JUL 2 7 2006

HON. RONALD A. GUZMAN
United States District Judge