IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



ILLINOIS TOOL WORKS, INC., )
a Delaware corporation, )
)
    Plaintiff, )
) No. 05 C 5002
    v. )
) Judge Ronald A. Guzmán
CHESTER BROTHERS MACHINED )
PRODUCTS, INC., an Illinois )
corporation, d/b/a "Pneu Fast" and/or )
"Pneu-Fast," )
)
    Defendant. )

## MEMORANDUM OPINION AND ORDER

Illinois Tool Works, Inc. ("ITW") sued Chester Brothers Machined Products, Inc., d/b/a "Pneu Fast" and/or "Pneu-Fast," for its alleged violations of the Lanham Act and state law arising from defendant's unauthorized use of plaintiff's trademark. The case is before the Court on plaintiff's Federal Rule of Civil Procedure ("Rule") 41(a)(2) motion to dismiss the second amended complaint with prejudice and without costs, and defendant's motion for attorney's fees. For the reasons set forth below, plaintiff's motion is granted in part and denied in part, and defendant's motion is denied.

### Facts

ITW manufactures orange-colored nailers and staplers. In March 2004, ITW wrote to defendant complaining about defendant's "Hold It!" nail advertisement. (*See* Pl.'s Reply, Ex. 1, Letter from Soltis to Pneu-Fast of 3/2/04 at 1.) Plaintiff told defendant that it had a trademark

registration pending for the color orange applied to the housing and grips of nailers and staplers and instructed defendant to immediately stop using that color on "its fastener driving tools, packaging, advertising, and collation tapes." (*Id.* at 2.)

> In April 2004, defendant responded to plaintiff's cease and desist letter by saying:
>
> [ITW's] objection to the "Hold It!" advertisement also ignores that Pneu-Fast does not currently sell nail guns. The nail gun Pneu-Fast used in the advertisement is a prototype, not currently in production by Pneu-Fast and one of many available in the market with orange coloring. However, in the event Pneu-Fast does begin manufacturing or selling its own nail guns . . . Pneu-Fast retains the right to use its color orange on those nail guns.
>
> Notwithstanding the foregoing, the "Hold It!" advertisement has run its course and there are no immediate plans to run this ad again. As to your claim of trademark infringement, Pneu-Fast has the right and will continue to use its historic orange trade dress and PRO-NAILS trademark on all packaging and products.

(Pl.'s Reply, Ex. 3, Letter from McClung to Soltis of 4/6/04 at 3.)

In May 2004, ITW obtained a federal trademark registration for the color orange mark applied to pneumatic and gas-powered nailers and staplers. (*See* Mot. Voluntary Dismissal, Ex. F, Req. Amendment.)

In May 2005, plaintiff saw another advertisement for defendant's nails that showed a model holding an orange-colored pneumatic nailer, and again complained to defendant:

> The orange coloration displayed on your Pneu Fast's pneumatic nailer is for all practical purposes indistinguishable from the color orange used by [ITW] on the identical type of tools and as identified in its trademark Registration Number 2,838,336. Further, Pneu Fast's utilization of orange coloration on the endcaps of the housings of those tools is a use that is explicitly identified in, and protected by, ITW's registration cited above. In addition, ITW . . . has a priority of use of that color configuration on pneumatic nailers and staplers by virtue of its continued and exclusive use of the color on its products since early 1997, well before your client began sales of nailers bearing the color orange.

(Mot. Voluntary Dismissal, Ex. B, Letter from Nieds to McClung of 5/19/05 at 2.) Plaintiff asserted that defendant's use of the color orange on a pneumatic nailer constituted trademark infringement and

2

asked defendant to "phase out all of use of the color orange on its pneumatic nailers and in the marketing of same." (*Id.* at 1-2.)

In July 2005, defendant responded to plaintiff's letter, saying:

> [I]n light of the prevailing use of the color orange amongst various manufacturers of nailers and similar tools, ITW is unable to claim that the color orange identifies and distinguishes ITW's product. Contrary to ITW's assertions, the customers cannot have come to treat the color orange on nailers as a signal of ITW's manufacturing of such nailers because a variety of other manufacturers similarly use the color orange in their products. . . .
>
> In light of the above, Pneu-Fast has the right and will continue to use its historic use of [sic] orange trade dress on all packaging and products.

(Pl.'s Reply, Ex. 9, Letter from Goldenberg to Nieds of 7/20/05 at 2.)

On August 30, 2005, plaintiff filed this suit, alleging that defendant had, among other things, infringed its trademark by selling orange-colored pneumatic nailers.

On December 14, 2005, defendant's counsel sent a letter to plaintiff's counsel threatening them with Rule 11 sanctions for alleging in the complaint that defendant sells nailers when defendant "markets nails rather than nailers or staplers." (*See* Pl.'s Mot. Voluntary Dismissal, Ex. C, Letter from Messer to Liss & Nieds of 12/14/05 at 2.)

Two weeks later, plaintiff moved for leave to file an amended complaint. Plaintiff wanted to amend, it said, because it learned "for the first time" after the complaint was filed that defendant "does not manufacture and sell pneumatic hand tools." (*See* Mot. Leave File Am. Compl. at 1.)

The Court granted plaintiff's motion and plaintiff filed an amended complaint, alleging that defendant's use of an orange-colored nailer bearing defendant's name in its nail advertisements constituted trademark infringement, false designation of origin and false advertising. (*Id.*)

3

Thereafter, defendant filed a Rule 12(b)(6) motion to dismiss, which was granted in part and denied in part. (*See* 7/27/06 Mem. Op. & Order.) Following that ruling, plaintiff filed a second amended complaint and discovery proceeded.

Sometime thereafter, plaintiff's largest customer began to market its own line of orange-colored pneumatic nailers. As a result, in November 2006, plaintiff amended its trademark registration to exclude pneumatic hand tools. (Pl.'s Mot. Voluntary Dismissal, Ex. F, Req. Amendment.)

In December 2006, plaintiff moved for voluntary dismissal with prejudice and without costs. Defendant responded by moving for attorney's fees.

## Discussion

The parties agree that this case should be dismissed with prejudice. The only question is whether plaintiff will be required to pay the costs and fees defendant incurred in this suit.

The recovery of costs is governed by Rule 54, which says that "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." Fed. R. Civ. P. 54(d). As plaintiff acknowledges, "a voluntary dismissal with prejudice renders the opposing party a 'prevailing party' within the meaning of Rule 54." *Mother & Father v. Cassidy*, 338 F.3d 704, 708 (7th Cir. 2003). A prevailing party may be denied costs, however, if it engaged in misconduct during the litigation. *Id.*

Plaintiff says that is the case here because defendant needlessly multiplied the proceedings by filing unnecessary discovery motions and failing to file a timely answer to the second amended complaint. The Court disagrees. The record in this case shows that defense counsel litigated this suit aggressively. And the Court has no doubt that both parties would have expended fewer resources if

4

their lawyers had acted as colleagues rather than combatants. However, the Federal Rules of Civil Procedure do not mandate collegiality, and defense counsel's behavior, though not laudable, does not justify denying defendant costs. Thus, plaintiff's motion to dismiss the second amended complaint with prejudice is granted, but defendant will be permitted to seek costs in accordance with Rule 54(d).

Defendant is not, however, content to recover only its costs. It also seeks to recover the fees it expended on this suit pursuant to section 1117 of the Lanham Act, which states that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). When "the defendant is the prevailing party, the standard [for awarding fees] is not whether the claimant filed suit in good faith but rather whether plaintiff's action was oppressive." *S Indus., Inc. v. Centra 2000, Inc.*, 249 F.3d 625, 627 (7th Cir. 2001). "A suit is oppressive if it lack[s] merit, ha[s] elements of an abuse of process claim, and plaintiff's conduct unreasonably increased the cost of defending against the suit." *Id.* Defendant says plaintiff's conduct was oppressive because: (1) defendant told plaintiff before it filed suit that defendant did not manufacture nailers; (2) defendant's suit was meritless because its trademark registration was fraudulently procured and the trademark did not, in any event, cover the nail gun in defendant's ad; and (3) defendant engaged in bad faith during the discovery process.

Contrary to its assertion, defendant did not unambiguously tell plaintiff before the ligation was filed that it was not in the nail gun business. Rather, when plaintiff complained about the "Hold It!" ad in 2004, defendant said that it did "not currently sell nail guns," the nail gun in the ad was "a prototype, not currently in production" and if it did start making or selling nail guns, it "retain[ed] the right to use [the] color orange on those nail guns." (*See* Pl.'s Reply, Ex. 3, Letter from McClung to Soltis of 4/6/04 at 3.) Similarly, in response to plaintiff's 2005 complaint, defendant did not deny

5

that it made a nail gun, saying instead that "Pneu-Fast has the right and will continue to use its historic use of [sic] orange trade dress on all packaging and products." (*See id.*, Ex. 9, Letter from Goldenberg to Nieds of 7/20/05 at 2.) Given the ambiguity of defendant's statements, it was not unreasonable for plaintiff to believe that defendant was planning to enter an orange-colored nail gun into the pneumatic tool market. Moreover, immediately after defendant unequivocally said – in a letter threatening Rule 11 sanctions – that it "markets nails rather than nailers or staplers," (*see* Pl.'s Mot. Voluntary Dismissal, Ex. C, Letter from Messer to Liss & Nieds of 12/14/05 at 2), plaintiff moved for leave to amend the complaint. Under the circumstances, plaintiff's decision to press its suit was not oppressive.

Defendant also contends that an award of fees is appropriate because plaintiff's suit had no merit. Specifically, defendant says that plaintiff fraudulently procured its trademark registration and, even if the mark were valid, the contested ad did not infringe it. Again, the Court disagrees. The fraud claim was not raised by defendant or decided on the merits during the lawsuit. Thus, the Court has no basis for holding that plaintiff fraudulently procured its trademark registration. Moreover, though defendant did challenge the infringement claim, as the Court explained in its order denying defendant's motion to dismiss, that claim was not patently defective:

> An allegedly confusing mark can infringe a registered mark without being identical to it. *Imperial Serv. Sys., Inc. v. ISS Int'l Serv. Sys., Inc.*, 701 F. Supp. 655, 658 (N.D. Ill. 1988). In fact, when the marks are not seen together, as in this case, it is "inappropriate to focus on minor stylistic differences to determine if confusion is likely." *Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.*,128 F.3d 1111, 1115 (7th Cir. 1997). Instead, comparisons in such cases "should be made in light of what happens in the marketplace and not merely by looking at the marks side-by-side." *Id.* (quotation omitted). Thus, even if the mark defendant used is not identical to plaintiff's registered mark, that fact would not preclude a finding of confusion.

(7/27/06 Mem. Op. & Order at 4.) Because the infringement claim was not decided on the merits and survived a motion to dismiss, the Court has no grounds for concluding that it is meritless.

Defendant's last argument in support of its fee request is that plaintiff engaged in misconduct during discovery that greatly increased the cost of defending the suit. However, Magistrate Judge Denlow, who supervised the process, did not consider any of plaintiff's alleged discovery violations to be serious enough to warrant sanctions. Moreover, discovery skirmishes are inevitable when, as in this case, lawyers take a scorched-earth approach to litigation. Because there is no basis for the Court to conclude that plaintiff acted in bad faith during discovery, plaintiff's alleged conduct does not warrant an award of fees. *See S Indus.*, 249 F.3d at 627.

## Conclusion

For all the reasons set forth above, the Court grants in part and denies in part plaintiff's motion for voluntary dismissal [doc. no. 103], and denies defendant's motion for attorney's fees [doc. no. 109]. The Court hereby dismisses this case with prejudice, but permits defendant to recover fees in accordance with Rule 54. Defendant has ten days from the date of this Memorandum Opinion and Order to submit its bill of costs. Plaintiff has seven days thereafter to respond. The Court will rule by mail on the bill of costs.

**SO ORDERED.**  ENTERED: 8/6/07

HON. RONALD A. GUZMAN
**United States District Judge**